IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JASON S. HARRISON,            )
                              )
              Plaintiff,      )
                              )
        v.                    )     1:13CV1121
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social Security, )
                              )
              Defendant.      )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jason S. Harrison, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed his application for Disability Insurance Benefits ("DIB") on November 22, 2011, alleging a disability onset date of September 1, 2010. (Tr. at 72, 183-86.)[1] Plaintiff's application was denied initially (Tr. at 72) and upon reconsideration (Tr. at 73). Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 108.) Plaintiff, his attorney, and an impartial vocational expert attended the subsequent hearing

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Docs. #7-12].

on June 11, 2013. (Tr. at 12.) Following this proceeding, the ALJ determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 25) and, on October 17, 2013, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[1] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[2] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[2] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, obesity, and major depression disorder. The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 14.) Accordingly, he assessed Plaintiff's RFC and determined that Plaintiff could perform light work with additional po stural and mental restrictions. (Tr. at 16.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not return to his past relevant work. However, the ALJ concluded at step five that, given Plaintiff's age,

5

education, work experience, and RFC, Plaintiff could perform other jobs available in the community and therefore was not disabled. (Tr. at 24-25.)

Plaintiff now argues that the ALJ improperly considered the opinion of Dr. Peter Gilmer, Plaintiff's treating orthopedist, rendering his RFC unsupported by substantial evidence. In particular, Plaintiff contends that the ALJ failed to consider Dr. Gilmer's April 13, 2013 opinion in accordance with 20 C.F.R. § 404.1527(c), better known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

If an ALJ does not give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). Finally, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

In the present case, Dr. Gilmer rendered two opinions. In the first, on November 16, 2011, as part of Plaintiff's treatment notes, Dr. Gilmer opined that Plaintiff suffered from chronic, discogenic pain and was "impacted tremendously in his ability to work by this problem." (Tr. at 378.) Dr. Gilmer further noted that Plaintiff's greatest restriction is his inability to sit for long periods and that "he will always have to have the flexibility to alter positions at work." (Tr. at 22-23, 378.) "Even in those situations," Dr. Gilmer continued, "it might have to be part-time work." (Id.) Overall, he opined that Plaintiff "will not be able to continue his current job" as a software engineer, an opinion in which the ALJ ultimately

concurred when he determined at step four that Plaintiff could not return to his past relevant employment. (Tr. at 24, 378.)

On April 13, 2013, Dr. Gilmer issued a second opinion in the form of a Physical RFC Assessment. In that assessment, he found that Plaintiff was able to lift and carry 10 pounds, stand and walk less than two hours in an 8-hour day, and sit with periodic changes of position. (Tr. at 23, 547-48.) Dr. Gilmer specifically cited Plaintiff's "documented lumbar degenerative disc disease" as the basis for his findings, and noted that Plaintiff "would struggle with a sedentary job." (Tr. at 23, 548.) On the next page of the assessment, Dr. Gilmer indicated extensive postural limitations in all potential areas, noting that he based these findings on Plaintiff's description of his symptoms. (Tr. at 23, 549.) Overall, Dr. Gilmer opined that Plaintiff's symptoms were "attributable to degenerative disc disease," and that "he has more symptoms from this problem than most people have." (Tr. 23, 550.)

The ALJ's opinion recounted both of Dr. Gilmer's opinions at length and concluded as follows:

> The undersigned has given Dr. Gilmer's first opinion greater weight and the second opinion less weight. The first opinion stated the claimant was unable to return to his prior job due to pain from prolonged sitting as the claimant consistently complained that his pain was decreased with walking and change of position. [The] second opinion seemed largely based on subjective complaints and seemed to uncritically accept as true, most if not all, of what the claimant reported.

(Tr. at 23.)

Plaintiff now contends that "[t]he ALJ erred by giving no weight" to Dr. Gilmer's opinion in violation of 20 C.F.R. § 404.1527. (Pl.'s Br. [Doc. #15] at 4.) This argument unfairly

8

minimizes the ALJ's reliance on both of Dr. Gilmer's assessments. The ALJ clearly accepted Dr. Gilmer's well-supported opinions regarding Plaintiff's inability to sit for long periods. He specifically incorporated this restriction into Plaintiff's RFC after a lengthy discussion of Plaintiff's testimony and the medical evidence as a whole, including Dr. Gilmer's opinions and treatment records. (Tr. at 16-23.) However, nothing in the record, including in Dr. Gilmer's own notes, supports the extreme lifting/carrying or postural limitations posited by his 2013 RFC assessment. As the ALJ correctly noted, Dr. Gilmer specified that his assessed postural limitations were "based on [Plaintiff's] description of symptoms" rather than any clinical findings.[3] As such, these limitations were not entitled to controlling weight. See, e.g., Bates v. Colvin, 736 F.3d 1093, 1100 (7th Cir. 2013) (citation omitted) ("[W]here a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it."); see also Mastro v. Apfel, 270 F.3d at 178.

In addition, although Dr. Gilmer generally cited Plaintiff's documented lumbar degenerative disc disease as the basis for Plaintiff's exertional and postural limitations, the record fails to support his findings. In fact, Dr. Gilmer repeatedly found that Plaintiff's inability to sit comfortably "is the *single factor* that is driving his concerns about work." (Tr. at 377 (emphasis added); see also Tr. at 378, 381, 388.) Moreover, Dr. Gilmer initially declined to make findings of his own regarding Plaintiff's further restrictions, and instead referred him in December 2011 for "a formal Functional Capacity Evaluation . . . to estimate his ability to work, and to specifically estimate the restrictions that would have to be in place for him to successfully do

---

[3] The ALJ also made specific findings in concluding that Plaintiff's subjective complaints were not fully credible, and Plaintiff does not challenge the ALJ's credibility determinations in this appeal.

this." (Tr. at 381.) According to Dr. Gilmer's notes in January 2012, the results of this evaluation, which are not otherwise included in the record, apparently reflected Plaintiff's ability "to do relatively heavy tasks," although he had "difficulty with things that required maximal flexion." (Tr. at 388.)

Plaintiff underwent an additional evaluation in 2012 with consultative examiner Micah Edwin. (Tr. at 421-27.) The ALJ reviewed the results of that examination in detail. (Tr. at 20.) The examination by Dr. Edwin concluded that Plaintiff's "ability to sit, stand, move about, lift, carry, handle objects, hear, speak, travel, and stamina is not impaired." (Tr. at 423.) This evaluation was considered by state agency examiner Jagjit Sandhu, who concluded that Plaintiff was limited to lifting or carrying 50 pounds occasionally and 25 pounds frequently. (Tr. at 81-83.) The ALJ ultimately assigned little weight to Dr. Sandhu's conclusion that Plaintiff could do medium level work, instead concluding that Plaintiff had greater exertional restrictions due to his back impairment. The ALJ therefore limited Plaintiff to light work with further restrictions. (Tr. at 16, 22.)

Ultimately, after considering all of the evidence, including in detail all of Plaintiff's treatment records, the ALJ included the requirement that Plaintiff be able to change positions once an hour, and also included lifting restrictions of no more than 10 pounds frequently and 20 pounds occasionally, which reflects consideration of Dr. Gilmer's exertional restrictions and the testimony of Plaintiff. (Tr. at 16-24, 47, 172.) Thus, the ALJ clearly credited Dr. Gilmer's opinions, at least to the extent supported by the clinical and other substantial evidence, in determining Plaintiff's RFC. The basis for the ALJ's determination was specifically set out in

the decision, the ALJ's determination is supported by substantial evidence, and the Court finds no error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for a Judgment Reversing the Commissioner [Doc. #14] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #18] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 27th day of July, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
